UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THE BURLINGTON INSURANCE                          CIVIL ACTION
COMPANY

VERSUS                                                   NO. 22-981

HOUSTON CASUALTY COMPANY                       SECTION "R" (1)

## ORDER AND REASONS

Before the Court is defendant Houston Casualty Company's ("HCC")
motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) or
alternatively under 12(b)(6).[1] Plaintiff, The Burlington Insurance Company
("TBIC"), opposes defendant's motion.[2] For the following reasons, the Court
grants in part and denies in part defendant's motion.

## I.    BACKGROUND

This case is an insurance dispute derivative of a tort case captioned
*Cameron Soule, et al. v. Woodward Design + Build, et al.*, No. 2018-935,
(hereinafter the "*Soule* Litigation") in the Civil District Court for the Parish
of Orleans.[3]   The *Soule* Litigation arose from a construction accident

---

[1]    R. Doc. 5.
[2]    R. Doc. 9.
[3]    R. Doc. 1 ¶ 1.

involving an elevator leased by Woodward Design + Build, LLC ("Woodward") from Eagle Access, LLC and Division Management, LLC ("Eagle Access").[4]   Defendant HCC was first sued by Cameron Soule in the *Soule* Litigation as the purported insurer of Woodward.   Later, HCC was sued by the state-court personal injury plaintiffs as the purported insurer of Eagle Access.   TBIC, the plaintiff here, was sued in the *Soule* Litigation as a purported insurer of the defendant Eagle Access.[5]

### A.   The Insurance Policies

This dispute centers around what, if any, duty HCC has to defend or otherwise contribute to Eagle Access' defense costs in the *Soule* Litigation. It is not disputed that HCC issued a primary commercial general liability insurance policy to Woodward numbered H16PC3025-00, as well as an excess liability policy numbered H16XC50653-00 (together, the "Policies"), both of which were in effect at the time of the accident that gave rise to the *Soule* Litigation.[6]   The Policies specified that a third party would become an additional insured (the "Additional Insured Provision") if Woodward leased

---

[4]   *Id.*
[5]   R. Doc. 9-13 at 13-14.
[6]   R. Doc. 1 ¶¶ 16-17.

equipment from it and "agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [the Policies]."[7]  As described below, the *Soule* plaintiffs alleged in the state-court petition that Eagle Access became an additional insured under the Policies. When Woodward entered into an agreement to lease two elevators from Eagle Access (the "Subcontract"), the parties included a provision that stipulated that Woodward would procure coverage for the project for which it was renting elevators from Eagle Access.  Specifically, the Subcontract contained a clause (the "CCIP Clause"), which provided that:

> 6. Woodward Design & Build, LLC (WDB) has arranged for the Project to be insured under a controlled insurance program (the "CCIP" or "Wrap-Up") . . . .  The CCIP shall provide to, as detailed in Exhibit "E", commercial general liability insurance and excess liability insurance, in connection with the performance of the Work [Eagle Access' Work] at the Project site.[8]

Relatedly, the Policies themselves also contained a clause (the "Wrap-Up Endorsement"), which stated that the definition of "an insured" also included Woodward's "enrolled contractors," defined as "contractors who, prior to the commencement of their work on the covered project, have completed the appropriate enrollments documents for the 'covered project'."[9]  These three

---

[7]    *Id.* ¶ 18.
[8]    R. Doc. 5-7 at 8.
[9]    R. Doc. 9-5 at 51.

portions of the respective agreements form the basis of TBIC's federal claim that HCC owes a duty to defend Eagle Access.  First, TBIC alleges that the CCIP Clause and the Wrap-Up Endorsement jointly formed a sufficient basis to trigger HCC's duty to defend Eagle Access, despite the Louisiana Supreme Court's holding that Eagle Access did not actually become an enrolled contractor under the Policies.  Second, TBIC contends that the Additional Insured Provision, taken together with the CCIP Clause, is sufficient to bring Eagle Access within the definition of an additional insured under the Policies.

### B.    The *Soule* Litigation

On August 8, 2017, Eagle Access first demanded defense and indemnity from HCC against anticipated claims arising from the July 28, 2017 accident, which HCC denied.[10]  TBIC, on the other hand, agreed to participate in the defense of Eagle Access pursuant to its policy issued to Eagle Access, despite taking the position that it was not actually liable to the state-court plaintiffs under that policy.[11]  On January 30, 2018,  Cameron Soule filed a complaint in the Civil District Court for the Parish of Orleans

---

[10]    R. Doc. 1 ¶ 23.

[11]    *Id.* ¶ 27.

4

alleging that Woodward and Eagle Access were liable for the 2017 accident. The suit was later consolidated with other plaintiffs' cases arising from the same accident.[12]  Notably, the *Soule* petition was eventually amended to include a claim against HCC as the insurer of Eagle Access under the Policies.[13]

As the *Soule* Litigation proceeded, Woodward and HCC cross-moved for summary judgment on the issue of whether Eagle Access was an insured under the Wrap-Up Endorsement.  The trial court eventually granted summary judgment in favor of Woodward and denied HCC's motion. HCC appealed the decision, and the Louisiana Supreme Court reversed, granting HCC's motion for summary judgment and denying Woodward's motion. *Soule v. Woodward Design + Build, L.L.C.*, No. 2021-322, at \*2 (La. May 11, 2021).

### C.    The Cost Sharing Negotiations

While the *Soule* Litigation was unfolding, TBIC tendered a demand to HCC to defend Eagle Access and reimburse TBIC for past defense costs it

---

[12]      R. Doc. 9-3.

[13]      R. Doc. 9-3 at 16 (Third Supplemental and Amended Petition ¶ 2).

incurred in defending Eagle Access.[14]  TBIC alleges that HCC eventually offered to pay half of the cost of defending Eagle Access, which TBIC accepted and memorialized in a September 3, 2020 letter.[15]  Specifically, the September 3 letter stated that that TBIC accepted HCC's offer to split Eagle Access's defense costs, and that TBIC anticipated "that the parties will enter into a more formal cost sharing agreement."[16]  TBIC concluded the letter by requesting a signature and return of the correspondence "[i]f HCC is agreeable to the foregoing."[17]  Then, on September 18, 2020, HCC's counsel sent a letter in response which explained that HCC "agrees to reimburse [TBIC] for 50% of the defense costs of" Eagle Access.[18]  HCC's attorneys concluded the letter by requesting that "TBIC prepare the defense cost sharing agreement referenced in [the] September 3, 2020 letter . . . only for further discussion."[19]

## D.   The Federal Litigation

---

[14]   R. Doc. 1 ¶ 28.

[15]   *Id.* ¶ 29.

[16]   R. Doc.

[17]   *Id.*

[18]   R. Doc. 9-2 at 1.

[19]   *Id.* at 4.

On April 12, 2022, TBIC brought this action in seeking a declaratory judgment that HCC has a duty to defend Eagle Access, as well as an award of money damages.[20]  It alleges that HCC has a duty to defend Eagle in the *Soule* Litigation under Louisiana insurance law and that HCC is also liable for breach of contract by not honoring its commitment to pay fifty percent of Eagle's defense costs.[21]  HCC moved to dismiss TBIC's federal complaint under Rule 12(b)(6) on the grounds that TBIC had no duty to defend an entity that was not in fact an insured, and that the parties never entered into a formal cost sharing agreement regarding Eagle's defense.[22]  HCC also moved under Rule 12(b)(1) on the alternative basis that the Court should abstain from exercising jurisdiction over this matter under the *Rooker-Feldman* doctrine or the Supreme Court's *Brillhart* decision.[23]  TBIC opposes HCC's motion.[24]

The Court considers the parties' arguments below.

## II.   RULE 12(B)(1) MOTION

### A.   Legal Standard

---

[20]   *See generally* R. Doc. 1.

[21]   *Id.*

[22]   R. Doc. 5.

[23]   *Id.*

[24]   R. Doc. 9.

Federal Rule of Civil Procedure 12(b)(1) permits dismissal for lack of jurisdiction over the subject matter of the claim.  In ruling on a 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

**B.   Discussion**

1.   *Rooker-Feldman Doctrine*

The Court first addresses defendant's contentions regarding the *Rooker-Feldman* doctrine.  Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to entertain collateral attacks on state court

judgments.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482 (1983).  In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court clarified that the *Rooker-Feldman* doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.* at 284.  In such cases, federal courts lack subject matter jurisdiction.  *Id.*

Further, this doctrine does not merely bar review of claims that were actually raised in state court proceedings.  "If the district court is confronted with issues that are 'inextricably intertwined' with a state judgment, the court is 'in essence being called upon to review the state-court decision,' and the originality of the district court's jurisdiction precludes such a review." *United States v. Shepherd*, 23 F.3d 923 (5th Cir. 1994) (quoting *Feldman*, 460 U.S. at 482 n.16).  On the other hand, the *Rooker-Feldman* doctrine does not preclude a district court's jurisdiction over a plaintiff's "independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Here, HCC argues, in summary fashion and without any meaningful analysis, that plaintiff's complaint should be dismissed under the *Rooker-Feldman* doctrine.[25]   But because defendant has not pointed to any state court judgment "inextricably intertwined" with the claims in this case, the Court finds that *Rooker-Feldman* is inapplicable.  *See Feldman*, 460 U.S., at 482 n.16.   The Louisiana Supreme Court, in overturning the summary judgment orders in the *Soule* Litigation, specified that "[t]he narrow issue presented . . . [was] whether Eagle was properly enrolled as an insured under the HCC policy."  *Soule v. Woodward Design + Build, L.L.C.*, No. 2021-322, at *2 (La. May 11, 2021).  As explained in Section III.B.1, *infra*, the issue of coverage is separate and distinct from whether HCC had a duty to defend Eagle Access. It is also separate from the contractual claim asserted in this matter.  *Cf. Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (an insurer's duty to defend an insured is "a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case" (citing *Elliott v. Cont'l Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007)).  Nor do the claims in this matter invite review of the non-substantive, procedural orders in the

---

[25]   R. Doc. 5-1 at 14-15.

*Soule* Litigation, *i.e.*, the scheduling order and the trial court's order on TBIC's motion for leave to file an amended petition.  To the contrary, this case, at most, involves independent claims that might sit in tension with the Civil District Court's procedural orders.  Because the complaint does not actually invite this Court to review and reject a state court's judgment, the Court finds that the *Rooker-Feldman* doctrine is inapplicable here.

### 2.   *Colorado River Abstention*

HCC also asserts that the Court should abstain from exercising jurisdiction under *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942).  But it is well established that "when an action involves coercive relief, the district court must apply the abstention standard set forth in *Colorado River Water Conservation District v. United States*."  *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394–95 (5th Cir. 2009) (internal citation omitted).  Here, because plaintiff seeks coercive relief in the form of damages in addition to declaratory relief, *Colorado River* provides the proper abstention framework instead of *Brillhart*.  *See Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir. 1994) (inclusion of breach of contract claim for monetary damages, among other claims seeking coercive relief, demanded application of *Colorado River*); *Tower Nat. Ins.*

*Co. v. Dixie Motors*, No. 14-1634, 2015 WL 2452336, at *3 (E.D. La. May 21, 2015) (holding that "inclusion of a request for coercive relief in the form of damages and attorney's fees 'indisputably removes this suit from the ambit of a declaratory judgment action'" (quoting *Barnett*, 561 F.3d at 395)).

Applying *Colorado River* to this case, the Court begins with the axiom that "[f]ederal courts have a 'virtual unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 817.  But, "in 'extraordinary and narrow' circumstances, a district court may abstain from exercising jurisdiction over a case when there is a concurrent state proceeding." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 (5th Cir. 1999) (quoting *Colo. River*, 424 U.S. at 813). The Court's decision whether to abstain should be based on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). For a court to abstain from exercising jurisdiction under the *Colorado River* doctrine, it first must find that the federal and state court actions are "parallel." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).  Actions are parallel when the same parties are litigating the same issues.  *See Republicbank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987).

Here, no parallel proceeding existed at the time TBIC filed this action. The *Soule* Litigation, even while TBIC was a party,[26] did not involve the issue of HCC's duty to defend Eagle Access, which is a separate issue from whether HCC insured Eagle Access under the Policy. *Martco*, 588 F.3d at 872. And, it appears that the claims raised in this case cannot be litigated in the underlying state-court dispute, as TBIC is no longer a party in the *Soule* Litigation, and the court denied TBIC's earlier motion to amend its petition to raise these claims in the *Soule* Litigation. As this case does not involve the same parties litigating the same issues as the *Soule* Litigation, the Court need not proceed to analysis of the *Colorado River* factors. *See Hartford Accident & Indem. Co.*, 903 F.2d at 360. The Court denies defendant's Rule 12(b)(1) motion.

## III.   RULE 12(B)(6) MOTION

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff

---

[26]   TBIC has been dismissed from the *Soule* Litigation.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

**B.   Discussion**

   *1.   TBIC's Duty to Defend*

Under Louisiana law, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the

complaint against the insured—in this case, the petitions in the *Soule* Litigation. *See Martco*, 588 F.3d at 872 ("Under Louisiana's 'Eight Corners Rule,' we must assess whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence." (citing *Adams v. Frost*, 990 So.2d 751, 756 (La. App. 2 Cir. 2008))); *La. Stadium & Exposition Dist. v. BFS Diversified Prods., LLC*, 49 So.3d 49, 51 (La. App. 4 Cir. 2010) ("The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy without consideration of extraneous evidence."). The insurer generally has a duty to defend its insured unless the allegations "unambiguously preclude coverage." *Martco*, 588 F.3d at 872 (citing *Elliott v. Continental Cas. Co.*, 949 So.2d 1247, 1250 (La. 2007)). The duty to defend "arises whenever the pleadings against the insured disclose a possibility of liability under the policy." *Id.* (citing *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La. 1987)).

Here, HCC's argument is that because the Louisiana Supreme Court held that Eagle Access did not properly enroll under the Wrap-Up Endorsement, HCC had no duty to defend Eagle Access. But the relevant question is whether the complaint against the insured unambiguously precludes coverage under the Policies. *Id.* The starting point in resolving this issue is *Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253 (1969), the

landmark Louisiana duty-to-defend decision.   That case involved an automotive insurance policy which covered accidents arising from third-party, non-owners' operation of the relevant vehicle when those individuals borrowed the vehicle with the owner's permission.  *Id.* at 259.   But third parties were not covered under the relevant policies if they operated the relevant vehicle without the owner's permission.  *Id.*  The *Czarniecki* court found that the defendant had not received permission from the owner, but nonetheless held that Aetna and State Farm were obligated to defend the owner.  *Id.*  This was because the petition alleged that the defendant had received permission from the owner to operate the vehicle.  *Id.*  The court explained that "if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit." *Id.*

Relevant to the present dispute, the *Soule* plaintiffs alleged that Eagle Access was an insured under the Policy in multiple versions of the state-court petition.[27]  The Court addresses the relevant state-court petitions below.

_____

[27]    R. Doc. 9-3 at 16; R. Doc. 9-4 at 22.

a.   *The January 15, 2019 complaint*

The first version of the petition to allege that HCC insured Eagle Access is the Third Supplemental and Amended Petition, filed on January 15, 2019.[28]  That pleading stated only that "HCC issued a policy of insurance to . . . Eagle Access . . . that provides insurance coverage for plaintiff's claims asserted herein."[29]   When a complaint conclusorily alleges coverage, the question arises as to the outer limits of the *Czarniecki* holding and the 'Eight Corners Rule.'   Indeed, in *Richards v. Farmers Export Company*, Louisiana's Fourth Circuit Court of Appeal explained that an overly broad reading of *Czarniecki*, carried to its logical conclusion, "would enable a plaintiff to pick out of the air any insurance company, allege coverage and require the company to defend."  377 So. 2d 859, 863 (La. App. 4 Cir. 1979), *writ denied*, 380 So. 2d 69 (La. 1980).  In denying a duty to defend, that court distinguished *Czarniecki* on the grounds that *Czarniecki* involved the duty to defend a *named* insured, while *Richards* involved individuals that were ordinarily non-insureds but were covered under certain circumstances.

---

[28]   R. Doc. 9-3 at 16 (Third Supplemental and Amended Petition ¶ 2). Subsequent iterations of the *Soule* petition replicated the insurance allegations against HCC contained in the January 15, 2019 petition, until the March 7, 2022 version of the petition was filed by the state-court plaintiffs.

[29]   *Id.*

*Id.  See also T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 678 n.11 (5th Cir. 2001) (recognizing but distinguishing *Richards*, noting that *Richards* was not applicable because the case at bar was factually dissimilar due to the presence of a named insured).  But a more accurate limiting principle of *Czarniecki* is contained within its own holding: that there must be *factual* allegations in the petition that would trigger coverage if true.  230 So. 2d at 259.  A proper reading of *Czarniecki* reveals that the decision turned on the underlying allegation that the defendant had permission to drive the vehicle, not simply the assertion that he was covered under the relevant policies.  *Id.* ("Most importantly, [plaintiffs] alleged that [the defendant] 'was driving the Chevrolet with the permission and consent of the insured within the terms of and within the meaning of the [policies].'").

Applying the above authorities to the present dispute, along with the general principle that the 'Eight Corners Rule' requires the court to compare the factual allegations in the complaint with the Policy, the Court finds that conclusory assertions of coverage are insufficient to trigger a duty to defend when the putative insured is not a named insured.  And, as the January 2019 version of the *Soule* petition contained only a conclusory assertion of HCC's coverage of Eagle Access, the duty-to-defend claim by TBIC must be dismissed.

18

Further, the Court is not persuaded by plaintiff's citation to the *Donahue* decision by another section of this court.  The *Donahue* decision included broad language that might be read as holding that the duty to defend a putative, unnamed insured is triggered by a plaintiff's complaint which simply "shows the possibility of coverage."  *Donahue v. Republic Nat'l Distrib. Co., LLC*, 489 F. Supp. 3d 455, 466 (E.D. La. 2020).  To the extent the *Donahue* court may have implied that a mere conclusory allegation of coverage is sufficient to trigger the duty to defend an unnamed putative insured, the Court declines to follow it in light of contradictory Louisiana authorities.  *See Czarniecki*, 230 So. 2d at 259; *Richards*, 377 So. 2d at 863; *cf. Tichenor v. Roman Cath. Church of Archdiocese of New Orleans*, 32 F.3d 953, 963 (5th Cir. 1994) (refusing to impose a duty to defend when the relevant policy provided coverage to priests only when acting in the course and scope of their employment, but the court determined that the priest acted outside that capacity in committing tortious conduct, despite the fact that the complaint plainly alleged the priest was acting in the course and scope of employment) (Wisdom, J.).  Moreover, the *Donahue* court, before making its broad statements about an insured's duty to defend, initially determined that the putative insured was in fact an additional insured under the relevant policy.  *Id.*  Thus, the issue before the court was limited to

19

whether the duty to defend an additional insured could be retroactively extended to before the insurer was provided proof of a party's additional insured status.  *Id.*  And, the *Vaughn* decision that *Donahue* relied on, which plaintiff also invokes, noted that the putative insureds in that case "had been sued based on allegations that they were property growers who had contracted with the named insured" and were therefore additional insureds under specific provisions of the relevant policy regarding coverage of third-parties.  *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 1 Cir. 2001), *writ denied*, 798 So. 2d 969 (La. 2001).  The *Soule* Litigation, on the other hand, presented mere conclusory allegations that HCC issued a policy to Eagle Access.  The Court therefore dismisses plaintiff's claim against HCC to the extent that it is based on the January 15, 2019 *Soule* petition.

### b.  *The March 7, 2022 complaint*

The *Soule* petition was amended on March 7, 2022, alleging Eagle Access' putative insured status in greater detail.[30]   TBIC relies on this petition to assert that HCC had a duty to defend Eagle Access because it was an additional insured under the Policies.  The March 2022 petition invoked

_____

[30]    *See* R. Doc. 9-4 at 135–39

the Additional Insured Provision of the Policies and the CCIP Clause in the

Subcontract in contending that Eagle Access was an additional insured under

the Policies.  To reiterate, the Additional Insured Provision of the Policies

states that the definition of an insured includes:

> any person or organization from whom you lease equipment
> when you and such person or organization have agreed in writing
> that such person or organization be added as an additional
> insured on your policy.[31]

The petition points to the CCIP Clause of the Subcontract, which states that

Woodward would arrange for the project to be insured under the Wrap-Up

Endorsement.  Particularly, the CCIP Clause of the Subcontract states that:

> 6. Woodward Design & Build, LLC (WDB) has arranged for the
> Project to be insured under a controlled insurance program (the
> "CCIP" or "Wrap-Up") . . . . The CCIP shall provide to, as detailed
> in Exhibit "E", commercial general liability insurance and excess
> liability insurance, in connection with the performance of the
> Work [Eagle Access' Work] at the Project site.[32]

The *Soule* plaintiffs therefore concluded that Eagle Access was an additional

insured under the Policies because Woodward agreed to procure coverage

for Eagle Access' work pursuant to the CCIP Clause, which was a sufficient

writing to bring Eagle Access within the definition of an additional insured.

---

[31]  *Id.*
[32]  R. Doc. 5-7 at 8.

The Court finds that the March 2022 petition, the CCIP Clause of the Subcontract mentioned in that pleading, and the Additional Insured Provision of the Policies collectively triggered HCC's duty to defend Eagle Access. The Court cannot say that, under a liberal reading of the March 2022 *Soule* petition, as required by the 'Eight Corner Rule,' coverage is "unambiguously preclude[d]." *Martco*, 588 F.3d at 872. To the contrary, the state-court pleading plainly "disclose[s] a possibility of coverage under the [Policies]." *Id.* Accordingly, defendant's motion is denied to the extent it seeks to dismiss plaintiff's claim arising from the March 7, 2022 petition.

### c. *Non-retroactivity of the duty to defend*

Finally, the Court holds that, because the *Soule* plaintiffs did not trigger HCC's duty to defend Eagle Access until the March 2022 amended pleading was filed, the duty to defend is not retroactive to the dates of the earlier petitions. It is the filing of pleadings which could lead to liability under a policy that trigger an insurer's duty to defend. *See Chicago Prop. Ints., L.L.C. v. Broussard*, 8 So. 3d 42, 48 (La. App. 5 Cir. 2009). Accordingly, imposition of the duty to defend prior to the filing of the complaint that triggers the duty is improper. *See Spitzfaden v. Daigle Welding Serv., Inc.*, 607 So. 2d 951, 955 (La. App. 4 Cir. 1992), *writ denied*,

612 So. 2d 59 (La. 1993) (holding that "the trial court was wrong in imposing upon [insurer] the duty to defend from the time the original petition was filed" when prior version of the petition did not properly allege liability under the relevant policy); *cf. Maldonado v. Kiewit Louisiana Co.*, 146 So. 3d 210, 220 (La. App. 1 Cir. 2014) ("When a petition is amended, the duty to defend analysis must be performed again to determine whether the amended petition alleges liability that is potentially within the scope of coverage."); *Donahue*, 489 F. Supp. 3d at 469 (holding that an insurer "had a duty to defend [the insured] at the time [the plaintiffs] filed their Fourth Supplemental and Amended Complaint"); *Guar. Nat. Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 n.15 (5th Cir. 1998) (noting that under Texas law, the most recent complaint determines an insurer's prospective duty to defend, but earlier complaints determine whether the insurer had a duty to defend prior to the filing of the operative complaint).  In light of the above-cited authorities, the Court finds that HCC had no duty to defend TBIC prior to March 7, 2022.  Accordingly, defendant's motion to dismiss is granted in part and denied in part as to the duty-to-defend claim against HCC.

    2.   *TBIC's Contractual Claim*

Under Louisiana law, "[t]he essential elements of a breach of contract claim are [that] (1) the obligor[ ] undert[ook] . . . an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So. 3d 1099, 1108-09 (La. App. 4 Cir. 2011). The only issue raised in HCC's motion is whether it undertook an obligation to perform. Generally, offer and acceptance may be made orally, in writing, or by conduct that, under the circumstances, clearly indicates consent. La. Civ. Code art. 1927; *see also Cantu Servs., Inc. v. Frazier*, No. 12-1292, 2016 WL 285108, at *3 (W.D. La. Jan. 21, 2016). Here, HCC argues that TBIC's breach of contract claim should be dismissed because HCC and TBIC never entered into a binding cost sharing agreement despite an intention to reduce the agreement to a writing. HCC's entire argument is premised on La. Civ. Code art. 1947, which provides that "[w]hen . . . the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." *Cf. Laroussini v. Werlein*, 27 So. 89, 90 (1899) (holding that if "a verbal contract of lease is agreed on, [but] it is . . . intended that it should be reduced to writing . . . then until the writing is drawn up and signed the contract is inchoate, incomplete, and either party . . . may recant, retract, recede, withdraw, decline to go further, refuse to consummate.").

But the "ultimate question is whether the parties intended to be bound" before memorializing the agreement in writing. *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 692045, at *4 (E.D. La. Feb. 18, 2011) (citing *Chevron U.S.A., Inc. v. Martin Expl. Co.*, 447 So. 2d 469, 472 (La. 1984)).   For example, in *Chevron U.S.A, Inc. v. Martin Exploration Co.*, the Louisiana Supreme Court held that an agreement was enforceable although labeled "preliminary" because the parties intended to be bound.   447 So.2d at 472.   Thus, the present inquiry tuns on whether the parties considered a written form to be a prerequisite to a binding agreement, or if the contemplated writing was intended as a formality to take place after entering into a binding agreement.   If the intent of the parties was to be bound first and then reduce the contract to a formal writing, then the contemplation of the written agreement does not foreclose the earlier existence of a contract.   If the writing was a perquisite to a binding contract, then the requirement of a writing is a suspensive condition, which prevents enforcement of the agreement until that condition is satisfied.   *Cf.* La. Civ. Code art. 1767 (explaining that a "conditional obligation is one dependent on an uncertain event" and that if "the obligation may not be enforced until the uncertain event occurs, the condition is suspensive").

In ruling on defendant's motion, the Court refers to the correspondence between the parties attached to the complaint. The starting point is the September 3, 2020 letter in which TBIC "memorialized its acceptance"[33] of HCC's purported offer to split defense costs.[34] In that letter, TBIC's counsel stated that TBIC accepted HCC's offer to split Eagle Access's defense costs, and that TBIC anticipated "that the parties will enter into a more formal cost sharing agreement."[35] TBIC concluded the letter by requesting a signature and return of the correspondence "[i]f HCC is agreeable to the foregoing."[36] Then, on September 18, 2020, HCC's counsel sent a letter in response which explained that HCC "agrees to reimburse [TBIC] for 50% of the defense costs of" Eagle Access.[37] HCC concluded the letter by requesting that "TBIC prepare the defense cost sharing agreement referenced in [the] September 3, 2020 letter . . . only for further discussion."[38]

In light of the above correspondence and the allegations of fact in the complaint that TBIC accepted HCC's offer to split defense costs for Eagle

---

[33]   R. Doc. 9 at 4.

[34]   R. Doc. 9-10 at 2.

[35]   *Id.*

[36]   *Id.*

[37]   R. Doc. 9-2 at 1.

[38]   *Id.* at 4.

Access, the Court finds that TBIC has stated a valid claim for breach of contract. The motion to dismiss is denied as to this claim.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss. The motion is GRANTED as to TBIC's duty-to-defend claim to the extent that claim arises from the January 15, 2019 state-court petition and substantially identical petitions, and that claim is DISMISSED WITH PREJUDICE. The motion is DENIED as to the duty-to-defend claim based on the March 7, 2022 state-court petition. The motion to dismiss is likewise DENIED as to the breach-of-contract claim.

New Orleans, Louisiana, this ___6th___ day of March, 2023.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE